# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| SCOTT TYZBIR, | 3:11-cv-00320-RCJ (WGC) |
| Plaintiff, | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| vs. | |
| KEN FURLONG, et. al. | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Robert C. Jones, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Defendants' Motion for Summary Judgment (Doc. # 25.)[1] Plaintiff opposed (Doc. #30) and Defendants have replied (Doc. # 31). After a thorough review, the court recommends that Defendants' motion be granted.

## I. BACKGROUND

At all relevant times, Plaintiff Scott Tyzbir (Plaintiff) was a pretrial detainee in custody of the Carson City Jail (CCJ). (Pl.'s Sec. Am. Compl. (Doc. # 12) at 1.) Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id*.) Defendants are Jack Freer, Dave Ramsey and Cory Dunckhorst. (*See* Screening Order (Doc. # 11).)

On screening, the court determined that Plaintiff states colorable Fourteenth Amendment claims in Counts I and II against Defendants based on allegations of inadequate medical care at CCJ. (Doc. # 11 at 5-6.) Plaintiff alleges that during his confinement at CCJ

---
[1] Refers to court's docket number.

1  from May 28, 2010 to June 29, 2010, Defendants failed to provide him with adequate medical
2  care. (Doc. # 12 at 10-13.) He claims that despite complaints of chest pain and shortness of
3  breath, Defendants refused to provide him with treatment. (*Id.*) According to Plaintiff, after
4  his release from CCJ, he was treated numerous times at various hospitals for serious cardiac
5  conditions. (*Id.*) In addition, Plaintiff claims that Defendants placed him in the "drunk tank"
6  for three days for observation, but that they drew the curtains, which precluded their ability to
7  observe him and supply him with medical treatment. (*Id.*)

8  Defendants move for summary judgment, arguing: (1) defendant Ramsey was not
9  deliberately indifferent to Plaintiff's serious medical needs; (2) the claims against defendants
10 Freer and Dunckhorst fail because there is no evidence they personally participated in the
11 alleged constitutional violations; and (3) Defendants are entitled to qualified immunity. (Doc.
12 # 25.)

## II. LEGAL STANDARD

14 "The purpose of summary judgment is to avoid unnecessary trials when there is no
15 dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*,
16 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). All reasonable inferences are drawn in
17 favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing
18 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate
19 if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that
20 there is no genuine issue as to any material fact and that the movant is entitled to judgment as
21 a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the
22 material facts at issue, however, summary judgment is not appropriate. *See Anderson*, 477 U.S.
23 at 250.

24 The moving party bears the burden of informing the court of the basis for its motion,
25 together with evidence demonstrating the absence of any genuine issue of material fact.
26 *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence
27 in an inadmissible form, only evidence which might be admissible at trial may be considered
28

2

by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* at 248.

In determining summary judgment, a court applies a burden shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'[ ] In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-25. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

3

parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id.* Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249-50, 255 (citations omitted).

## III. DISCUSSION

**A. STANDARD**

The rights of pretrial detainees are governed by the Fourteenth Amendment, *see Bell v. Wolfish*, 441 U.S. 520 (1979); however, courts borrow from the Eighth Amendment when analyzing alleged constitutional deprivations. *See Pierce v. County of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008). The Fourteenth Amendment "imposes, at a minimum, the same duty the Eighth Amendment imposes: persons in custody have the established right to not have officials remain deliberately indifferent to their serious medical needs." *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002). Thus, Eighth Amendment standards are utilized in evaluating medical care claims brought by pretrial detainees. *See Lolli v. County of Orange*, 351 F.3d 410, 419 (9th Cir. 2003).

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "The requirement of deliberate

4

indifference is less stringent in cases involving a prisoner's medical needs than in other cases involving harm to incarcerated individuals because '[t]he State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns.'" *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *rev'd on other grounds, WMX Tech., Inc. v. Miller*, 104 F.3d. 1133 (9th Cir. 1997). "In deciding whether there has been deliberate indifference to an inmate's serious medical needs, [the court] need not defer to the judgment of prison doctors or administrators." *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989).

A finding of deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's responses to that need." *McGuckin*, 974 F.2d at 1059. "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Id*. (citing *Estelle*, 429 U.S. at 104). Examples of conditions that are "serious" in nature include "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id*. at 1059-60; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (quoting *McGuckin* and finding that inmate whose jaw was broken and mouth was wired shut for several months demonstrated a serious medical need).

If the medical needs are serious, Plaintiff must show that Defendants acted with deliberate indifference to those needs. *Estelle*, 429 U.S. at 104. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action under § 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts which the inference could be drawn that a substantial risk of

serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (quoting *Farmer*, 511 U.S. at 858). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment" or the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner. *Hunt v. Dental Dep't.*, 865 F.2d 198, 201 (9th Cir. 1989) (internal quotation marks and citation omitted). Where delay in receiving medical treatment is alleged, a prisoner must demonstrate that the delay led to further injury. *McGuckin*, 974 F.2d at 1060.

In addition, a prison physician is not deliberately indifferent to an inmate's serious medical need when the physician prescribes a different method of treatment than that requested by the inmate. *See McGuckin*, 974 F.2d at 1059 (explaining that negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights); *see also Snow v. McDaniel*, 681 F.3d 978, 987 (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (difference of opinion between a prisoner-patient and medical staff regarding treatment is not cognizable under § 1983). To establish that a difference of opinion amounted to deliberate indifference, the inmate "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and that the course of treatment was chosen "in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citations omitted); *see also Snow*, 681 F.3d at 988 (quoting *Jackson*, 90 F.3d at 332) (finding that "a reasonable jury could conclude that the decision of the non-treating, non-specialist physicians to repeatedly deny the recommendations for surgery was medically unacceptable under the circumstances").

**B. ANALYSIS**

Assuming without deciding that Plaintiff suffered from a serious medical condition,

6

the court finds that the evidence does not demonstrates deliberate indifference, and Plaintiff has not raised a genuine issue of material fact in order to preclude summary judgment.

### 1. Defendant Ramsey

Plaintiff was arrested by deputies of the Carson City Sheriff's Office on May 28, 2010, and following his arrest he was booked into CCJ. (Doc. # 25 at 3; Doc. # 25-1 at 5 (Ex. 1-A); Doc. # 30 at 3.) Plaintiff was incarcerated as a pretrial detainee at CCJ from May 28, 2010 to June 29, 2010. (Doc. # 25 at 4; Doc. # 30 at 3.) As part of the booking process, Plaintiff underwent a medical screening which included visual observation and questions concerning his health condition. (Doc. # 25 at 4, n. 3; Doc. # 30 at 3.) At some point during this medical screening, it was noted that Plaintiff was uncooperative and needed time to detox. (Doc. # 25 at 4; Doc. # 25-1 at 8; Doc. # 30 at 3.) In addition, it was noted that Plaintiff was not being truthful with respect to his responses to medical questions. (Doc. # 25-1 at 9.)

Plaintiff does not dispute that during his stay at CCJ, he sought medical care on several occasions, and each time he made a medical complaint, he was evaluated by jail personnel. (Doc. # 30 at 3-4.)

Defendant Ramsey is a nurse practitioner who, at the time period in question, provided medical care to inmates at CCJ on a contract basis. (Doc. # 25-1 at 35 ¶ 3 (Ramsey Decl.).)

On June 1, 2010, Plaintiff was moved to a cell near the booking area for observation after he told a control officer he was having trouble breathing. (Doc. # 25-1 at 10-12; Doc. # 25-1 at 32 ¶ 7 (Martensen Decl.); Doc. # 25-1 at 36 ¶ 7 (Ramsey Decl.).) Upon observation, no trouble was observed, and Plaintiff asked for a phone, a shower, and to see a doctor. (*Id.*)

Plaintiff was seen by defendant Ramsey on June 2, 2010, with complaints of congestion, a cough, and mucous in his sinuses. (Doc. # 25-1 at 10-12; Doc. # 25-1 at 36 ¶ 7 (Ramsey Decl.).) He denied a history of asthma or respiratory disease. (*Id.*) Upon examination, Plaintiff appeared alert and oriented and had normal respiratory function.

7

1  (*Id.*) Plaintiff was diagnosed with an upper respiratory infection and was prescribed a Z-
2  pack (antibiotics). (*Id.*) Plaintiff was cleared to return to the general population, and
3  ordered to return to see defendant Ramsey if his condition did not improve. (*Id.*)
4      On June 7, 2010, Plaintiff asked that his congestion medication be renewed, but the
5  request was denied because Plaintiff had been prescribed antibiotics, which were not
6  appropriate to be given on a continued basis. (Doc. # 25-1 at 37 ¶ 9 (Ramsey Decl.).)
7      Plaintiff saw defendant Ramsey on June 7, 2010, for complaints of neck and back
8  pain. (Doc. # 25-1 at 14-16; Doc. # 25-1 at 32 ¶ 8(Martensen Decl.); Doc. # 25-1 at 36 ¶ 8
9  (Ramsey Decl.).) Plaintiff indicated that his pain was from an automobile accident he was
10 involved in 1992 for which he never received treatment or medication. (*Id.*) Plaintiff
11 requested a second mattress for his cell. (*Id.*) Upon examination, Ramsey could not
12 determine whether Plaintiff was suffering from neck and back pain, but determined he was
13 exhibiting drug seeking behavior as a result of methamphetamine withdrawals. (*Id.*) As a
14 result, his request for a second mattress was denied. (*Id.*)
15     On June 11, 2010, Plaintiff notified jail staff he was hearing voices. (Doc. # 25-1 at
16 17.) Plaintiff was referred to and examined by Dr. McEllistrem, CCJ's mental health
17 professional. (*Id.*; Doc. # 25-1 at 40 ¶ 3 (McEllistrem Decl.).) Plaintiff had no history of
18 mental health treatment. (*Id.*) Dr. McEllistrem was informed by CCJ staff that Plaintiff was
19 seeking drugs for the purpose of alleviating symptoms related to methamphetamine
20 withdrawal. (Doc. # 25-1 at 40 ¶ 5.) Dr. McEllistrem concluded that if Plaintiff was having
21 hallucinations, they could have been caused by withdrawal symptoms or long term drug
22 abuse. (*Id.*) He ordered that Plaintiff be taken out of general population and placed in a cell
23 in the booking area for observation and monitoring of his mental health. (*Id.*)
24     Dr. McEllistrem saw Plaintiff again on June 14, 2010. (Doc. # 25-1 at 18; Doc. # 25-1
25 at 41 ¶ 6 (McEllistrem Decl.).) Dr. McEllistrem determined that Plaintiff had done well
26 during his period of observation, and at the appointment he denied hallucinations or
27 suicidal ideation. (*Id.*)
28

8

Plaintiff saw Dr. McEllistrem again on June 16, 2010, after requesting Xanax for anxiety. (Doc. # 25-1 at 19; Doc. # 25-1 at 40 ¶ 7 (McEllistrem Decl.).) Dr. McEllistrem noted that Plaintiff had denied mental health history or Xanax use during booking, but stated that jail "made him anxious." (*Id.*) Dr. McEllistrem was concerned Plaintiff was exhibiting drug seeking behavior, and offered Plaintiff some coping techniques for his anxiety. (*Id.*)

Plaintiff saw defendant Ramsey on June 18, 2010, related to complaints of right thumb pain. (Doc. # 25-1 at 20-22; Doc. # 25-1 at 32 ¶ 9 (Martensen Decl.).; Doc. # 25-1 at 37 ¶ 10 (Ramsey Decl.).) Plaintiff's thumb appeared swollen, and he was diagnosed with right thumb trauma. (*Id.*) Ramsey wrapped Plaintiff's thumb in a bandage, prescribed him an anti-inflammatory medication, and ordered an x-ray. (*Id.*) During the examination, Plaintiff informed Ramsey that he felt like he could not breathe the previous night. (*Id.*) Plaintiff also told Ramsey that he had previously taken medication for blood pressure. (*Id.*) This was the first time Plaintiff had mentioned a history of blood pressure issues. (*Id.*) Upon examination, Plaintiff appeared to be breathing normally. (*Id.*) Ramsey took Plaintiff's blood pressure, and stated that he would re-check his blood pressure levels on June 22, 2010. (*Id.*)

Plaintiff was transported to Carson Tahoe Hospital on June 22, 2010, for an x-ray of his right thumb, and the results were negative for fracture. (Doc. # 25-1 at 26-29; Doc. # 25-1 at 33 ¶ 10 (Martensen Decl.); Doc. # 25-1 at 37 ¶ 11 (Ramsey Decl.); Doc. # 25-1 at 45.)

Ramsey saw Plaintiff again on June 22, 2010, to check Plaintiff's blood pressure. (Doc. # 25-1 at 23-25; Doc. # 25-1 at 37-38 ¶ 12.) Plaintiff advised Ramsey that he felt some pressure on his diaphragm when lying down at night and that his symptoms were relieved by sitting up. (*Id.*) A physical examination revealed Plaintiff was alert, oriented, and had normal respiratory function. (*Id.*) Plaintiff was diagnosed with mild hypertension and prescribed medication, a water pill and diuretic to address his elevated blood pressure and hypertension. (*Id.*)

Ramsey saw Plaintiff again on June 29, 2010, to check his blood pressure. (Doc. # 25-1 at 27-28; Doc. # 25-1 at 33 ¶ 11 (Martensen Decl.); Doc. # 25-1 at 38 ¶ 13.) Ramsey prescribed Plaintiff medication to help lower his blood pressure. (*Id.*) Ramsey told Plaintiff he would re-check his blood pressure the following day, but Plaintiff was discharged from CCJ on June 29, 2010. (*Id.*)

The evidence reveals that on every occasion that Plaintiff made a medical complaint or request, he was promptly evaluated and treated by CCJ personnel, including defendant Ramsey. There is no evidence to indicate that defendant Ramsey exercised deliberate indifference towards Plaintiff's medical needs by delaying or withholding necessary medical treatment. Instead, the evidence establishes that Plaintiff received responsive and appropriate health care during his period of incarceration at CCJ.

The fact that Plaintiff received treatment after being released from CCJ does not raise a genuine issue of material fact concerning the treatment he received at CCJ. At most, Plaintiff's reference to his medical treatment after his period of incarceration presents an alleged claim of medical malpractice or negligence, which is not constitutionally actionable. *See Toguchi*, 391 F.3d at 1060; *McGuckin*, 974 F.2d at 1060.

Accordingly, the court finds that summary judgment should be entered in defendant Ramsey's favor.

**2. Defendants Dunckhorst and Freer**

Defendant Dunckhorst served as a guard at CCJ during Plaintiff's period of incarceration. (Doc. # 25-1 at 52 ¶ 3.) Dunckhorst asserts that Plaintiff never complained to him about chest pain or symptoms of a heart attack, or informed him that he needed emergency medical attention. (*Id.* at 53 ¶ 4.) In addition, Dunckhorst never ordered that Plaintiff be placed in a cell in the booking area for purposes of punishing him. (*Id.* ¶ 5.)

Defendant Freer asserts that he is a Chief Deputy in Administration at CCJ, his job duties involve little to no contact with individuals incarcerated at CCJ, and he had no contact with Plaintiff during his incarceration. (Doc. # 25-1 at 56-57 ¶¶ 2-5.) Nor did Freer

have any knowledge of Plaintiff's medical condition while he was incarcerated at CCJ. (*Id.* ¶ 6.)

A claim brought under 42 U.S.C. § 1983 requires a specific relationship between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted). Thus, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Plaintiff does not even address the claims insofar as defendants Dunckhorst and Freer are concerned, let alone present evidence to create a genuine issue of material fact as to their participation in any asserted constitutional violation. Accordingly, the court finds that summary judgment should be entered in favor of defendants Dunckhorst and Freer.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **GRANTING** Defendants' Motion for Summary Judgment (Doc. # 25).

///
///
///
///
///
///
///
///

11

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: September 18, 2012.

　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　WILLIAM G. COBB
　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE